UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIA ANN PACE,
                        Plaintiff,

                                                          **Hon. Hugh B. Scott**

                v.

                                                          **17CV1139**

                                                          **CONSENT**

COMMISSIONER,
                                                          **Order**

                        Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (plaintiff), 13 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 8).

## PROCEDURAL BACKGROUND

The plaintiff ("Maria Ann Pace" or "plaintiff") filed an application for disability insurance benefits on February 3, 2014 [R. 10]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 30, 2016, that the plaintiff was not disabled

within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 12, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 7, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 13), and plaintiff duly replied (Docket No. 14). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 40-year-old with a high school education, last worked as a mail sorter (unskilled work) [R. 27]. He contends that she was disabled as of the onset date of October 2, 2013 [R. 10]. Plaintiff claims the following impairments deemed severe by the ALJ: unspecified anxiety disorder with panic attacks, major depressive disorder, osteopenia due to long term steroid use [R. 12-13]. Plaintiff claims other ailments not deemed severe by the ALJ: Addison's disease (which the ALJ found was treated with hormone/steroid replacement therapy and dosage changes) [R. 12]; thyroid disease (that the ALJ found was treated by right thyroid lobectomy) [R. 13]; history of gastrointestinal reflux disease (that the ALJ deemed was well controlled through medication) [R. 13]; left-side pelvis (that the ALJ concluded was treated in post left salpingo-oophorectomy without surgical complications) [R. 14]. Plaintiff also claimed stage IV breast cancer which the ALJ noted that plaintiff sought treatment at Roswell Park but that facility found no evidence of malignancy [R. 14]. Plaintiff also claimed lower extremity numbness and foot cramping but the ALJ found that plaintiff did not assess a musculoskeletal

impairment affecting the low back, plaintiff walked with normal gait, full range of motion, and had no diagnosis low back pain or neuropathy [R. 14-15].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff's condition did not meet Listings 9.00 (endocrine disorders) or 12.00 (mental disorders) [R. 16]. As for Listings 12.04 and 12.06 "Paragraph B" criteria, the ALJ concluded that plaintiff did not meet those criteria, since she did not have two marked limitations [R. 16-18]. As for "Paragraph B" Activities of Daily Living, the ALJ found plaintiff only had mild restrictions; as for the criteria for Social Functioning, the ALJ found she had moderate difficulties; as for Concentration, Persistence, or Pace, the ALJ found plaintiff had moderate difficulties; and plaintiff had only one episode of decompensation [R. 16-18].

The ALJ found that plaintiff had a residual functional capacity light work, except able to sit for six hours of an 8-hour workday with normal breaks; able to stand/walk for six hours of 8-hour workday with normal breaks; able to lift/carry 10 pounds frequently, 20 pounds occasionally; can have no direct contact with the public; can work around others in a small group setting of 10 people or less (i.e., no crowds), but interaction with co-workers is occasional; can accept normal levels of supervision; there can be no fast paced work; and would be off task about ten percent of the workday [R. 18].

The ALJ found that plaintiff was able to perform her past relevant work as a mail sorter [R. 27]. With this capacity, the vocational expert also opined that a hypothetical claimant like plaintiff was able to perform such occupations as a laundry worker (light, unskilled), office helper (light, unskilled), marker (light, unskilled), or final inspector (light unskilled), as well as sedentary work [R. 27-28]. As a result, the ALJ held that plaintiff was not disabled [R. 29].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

4

national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala,

5

37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage.

I.  Development of Record to Include Mental Health Counselor

Plaintiff first complains that the ALJ needed to develop the record to include treatment records from her mental health counselor, requiring remand (Docket No. 9, Pl. Memo. at 24-29). Plaintiff argues the ALJ based her mental assessment only upon plaintiff's testimony, the reports of the consultative psychologist, and a non-examining psychologist "without further development" (Docket No. 9, Pl. Memo. at 24). She claims that this violates the ALJ's duty to develop the record (id. at 25). The ALJ stated that plaintiff did not submit records from a mental health counselor ([R. 19-20]; Docket No. 9, Pl. Memo. at 26).

Defendant counters that the ALJ asked during the hearing whether the record was complete (Docket No. 13, Def. Memo. at 27; [R. 39]) and kept the record open for 21 days for plaintiff to submit additional evidence (Docket No. 13, Def. Memo. at 27; [R. 84-85]). Defendant contends that the ALJ fulfilled her duty by keeping the record open (Docket No. 13, Def. Memo. at 27 (citing cases)). Plaintiff also fails to state what the mental health counselor would state, which defendant argues is required to justify supplementing the record (id. at 28), Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary Order).

6

Plaintiff replies that "when faced with an obvious gap in the record, the ALJ has an independent duty to develop the record" (Docket No. 14, Pl. Reply at 4), especially when the ALJ identifies the omission (id.). She argues that "therapy notes plainly would have provided crucial insight into Plaintiff's mental impairments and would have been necessary to make a full and fair determination" (id. at 5 (emphasis in original)).

Following plaintiff's suicide attempt, she had seen a psychiatrist, Dr. Ramesh, and a mental health counselor [R. 19]. According to Dr. Janine Ippolito's consultative report, plaintiff saw a counselor at BryLin Outpatient Clinic once every two months [R. 588]. The Administrative Record contains plaintiff's inpatient treatment for a few days at BryLin [R. 278-84, 285-91] but not any subsequent counseling records. Plaintiff did not submit treatment records from the mental health counselor [R. 19-20] although the ALJ gave her the opportunity to supplement the record [R. 84-85]. While the ALJ has a duty to assist plaintiff in completing her medical history, e.g., 20 C.F.R. § 404.1513(b)(1), the agency need only "make every reasonable effort to help" plaintiff get medical evidence from her medical sources, id., § 1512(b)(1)(i). Since this is a non-adversarial proceeding, the ALJ "must . . . affirmatively develop the record," Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quotation omitted); Montes o/b/o E.M.H. v. Comm'r, No. 17CV322, 2018 WL 5668512, at *3 (W.D.N.Y. Nov. 1, 2018) (Roemer, Mag. J.). Plaintiff or her counsel's failure to provide records of their own accord does not excuse the ALJ from not making her own good faith effort to develop the record, Montes o/b/o E.M.H, supra, 2018 WL 5668512, at *3. This applies only if a gap in the record is found, id.; Sotososa v. Colvin, No. 15CV854, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (Geraci, Ch. J.).

7

Thus, the threshold issue is whether there is a gap in the record for plaintiff's mental health care. The ALJ had plaintiff's psychiatric records but not mental health counseling notes from BryLin. This is like two cases cited above where plaintiff at least identified the provider that did not have records before the ALJ, cf. Montes o/b/o E.M.H., supra, 2018 WL 5668512, at *3; Sotososa, supra, 2016 WL 6517788, at *3. Plaintiff does not speculate what the counselor's treatment notes would reveal, merely that these notes would provide further insight to plaintiff's mental impairments (see id. at 28). This Court finds that there is no gap, despite the noted absence of mental health counseling notes. As a result, plaintiff's motion on this ground is **denied**.

II.     Rejection of Medical Opinions

Plaintiff next contends that the ALJ erred in rejecting the opinions of her treating psychiatrist, Dr. Ramesh Konakanchi (referred to as "Dr. Ramesh" by the parties, e.g., Docket No. 9, Pl. Memo. at 14; Docket No. 13, Def. Memo. at 3) and her physician, Dr. Quamrunnisa Rahman (Docket No. 9, Pl. Memo. at 13-14, 14-18, 18-20).

A.      Dr. Ramesh

Plaintiff's psychiatrist, Dr. Ramesh, diagnosed plaintiff with major depression and a panic disorder without agoraphobia [R. 24, 809-13, 815-19, 829-31, 857-58, 867]. On June 1, 2015, the doctor submitted a Mental Impairment Questionnaire and Dr. Ramesh reported plaintiff had a major depressive disorder with[1] agoraphobia and was on Xanax and Effexor but had difficulty responding [R. 25, 795, 279]. The doctor noted plaintiff had "persistent disturbances of mood and affect" [R. 796]. Dr. Ramesh opined that plaintiff had marked

---
[1] This is a handwritten form and possibly difficult to make out the doctor's findings.

limitations for restriction of activities of daily living and difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence, or pace [R. 797]. (Docket No. 9, Pl. Memo. at 14-15.)

The ALJ gave little weight to Dr. Ramesh's opinion [R. 26], since plaintiff's progress notes did not reflect her agoraphobia [R. 25] and the progress notes were not consistent with plaintiff taking psychotropic medication but difficulty responding or plaintiff's GAF score of 50, indicating serious symptoms or that functioning was seriously impaired under DSM-IV [R. 25, 800]. The ALJ also pointed to inconsistencies in Dr. Ramesh's claiming that plaintiff had difficulty responding to medication but stated in progress notes that plaintiff was tolerating her medication [R. 25].

Plaintiff argues that the ALJ mischaracterized the record and did not consider the length, nature, and extent of the treatment relationship between Dr. Ramesh and plaintiff (Docket No. 9, Pl. Memo. at 15). Plaintiff was treated by the doctor from 2006 to 2015 (save period between August 2012 to October 2013) (id.; [R. 795]). Plaintiff contends that the ALJ did not recognize Dr. Ramesh was a specialist in psychiatry (Docket No. 9, Pl. Memo. at 15). She believes the ALJ gave undue weight to finding that plaintiff was coping with her husband and tolerating her medication (id. at 16).

Plaintiff is correct that she had a long-term treatment relationship with psychiatrist Dr. Ramesh. The doctor's June 2015 report [R. 795], however, is contradicted by treatment notes on the panic disorder without agoraphobia (ICD-9-CM 300.01) assessment and whether plaintiff tolerated medication. Agoraphobia (ICD-9-CM 300.22) is a distinct mental condition and is marked fear or anxiety about two (or more) of the following: the use of public

9

transportation; being in open spaces; being in enclosed places; standing in line or being in a crowd; or being outside of home, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, DSM-5 at 217 (5th ed., 2013); compare id. at 217-21 (agoraphobia) with id. at 208-14 (panic disorder); see also Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders-IV, 432-33 (panic disorder with agoraphobia), 440 (panic disorder without agoraphobia) (rev. ed. 2000). Dr. Ramesh consistently coded plaintiff's condition as ICD-9-CM 300.01, panic disorder without agoraphobia.

There is no indication that plaintiff suffered from agoraphobia. Dr. Ramesh's treatment notes consistently stated that plaintiff tolerated her medication and the doctor did not change dosage or medication [e.g., R. 816]. A treating source is entitled to controlling weight if it is consistent with the record, 20 C.F.R. § 404.1527(c)(4) (see Docket No. 13, Def. Memo. at 17, 19). The ALJ thus had substantial evidence to weigh Dr. Ramesh's opinion accordingly and to discount the June 2015 report since that report is not consistent with the doctor's treatment reports. Plaintiff's motion on this ground is **denied**.

Plaintiff next contends that the ALJ mischaracterized her activities of daily living to rebut Dr. Ramesh's opinion (Docket No. 9, Pl. Memo. at 17-18; Docket No. 14, Pl. Reply Memo. at 1-2). First, for the Step Three analysis of plaintiff's limitations and whether they met Social Security Listings by evaluating her mental health claims under "Paragraph B" criteria, the ALJ found that plaintiff had mild restriction on her daily activities [R. 16]. There, the ALJ noted from plaintiff's own Function Report [R. 192] that she cared for her three daughters, driving them to school, making dinner, feeding and tending to the dog, performing personal grooming, cleaning, shopping for food once a week, doing laundry, and watching one daughter pay softball

regularly [R. 16, 192]. While not persuasive at Step Four [R. 18], the ALJ did consider plaintiff's daily activities as compared with Dr. Ramesh's opinion [R. 24]. From plaintiff's reported socializing with her children, sister, and parents, and taking vacations to Florida and the effective use of medication, plaintiff's "engagement in a wide range of activities of daily living which require sustained attention and concentration and interacting with others, such as child care, driving, shopping, paying bills, doing household chores, caring for pets, and helping others," the ALJ concluded that plaintiff could perform the mental work activities in the residual functional capacity assessment [R. 24, 18]. The ALJ also found that there was no support for plaintiff requiring extra breaks or need to take long naps throughout the workday [R. 24]

Defendant recounts plaintiff's activities of daily living from February 2014 in her Function Report [R. 192-95], the activities she reported to consultative examiner Dr. Ippolito [R. 591], and what plaintiff told to Dr. Ramesh [R. 814, 809, 858] (Docket No. 13, Def. Memo. at 18-19).

Plaintiff contends that Dr. Ramesh opined that plaintiff's agoraphobia cannot be countered by the ALJ and defendant's construing stated daily activities. As noted above, Dr. Ramesh's assessment is not based upon the rest of the treatment notes. Plaintiff's activities of daily living stated in her Function Report and in Dr. Ramesh's treatment notes do not show agoraphobia or other limitation. Thus, plaintiff's motion on this basis is **denied**.

B.  Dr. Rahman

On June 16, 2015, plaintiff's physician Dr. Rahman reported that plaintiff had aches and pain, including low back pain, fatigue, opining that plaintiff could lift less than ten pounds occasionally and ten pounds rarely, but never more than twenty pounds [R. 22, 806]. In a

11

May 2016 report, Dr. Rahman said that plaintiff's pain and other symptoms occasionally interfered with attention and concentration [R. 941]. The ALJ objects to this finding because "occasionally" is broadly defined (6-33% of a workday) [R. 25, 941] (see also Docket No. 9, Pl. Memo. at 18). The ALJ gave some but not significant weight to Dr. Rahman because plaintiff's daily activities showed sufficient attention and concentration and sufficiently coped with normal work-related stressors [R. 25]. The ALJ also noted that Dr. Rahman's opinion did not state how long plaintiff would be absent due to her impairments or for treatment [R. 25].

As plaintiff argued for Dr. Ramesh, she faults the ALJ's consideration of Dr. Rahman's opinion without regard to the treatment relationship between plaintiff and Dr. Rahman (Docket No. 9, Pl. Memo. at 18-19). Plaintiff emphasized that her daily activities were "very limited" (id. at 19) since she lived with her children and requires help from her daughters (such as driving her, help with laundry and other chores) [R. 41, 50, 56 (plaintiff's testimony)] (Docket No. 9, Pl. Memo. at 19). But plaintiff's Function Report of February 2014 [R. 192], indicated additional activities plaintiff could perform. Defendant again counters that Dr. Rahman's opinion as to plaintiff's limitations were inconsistent with her activities of daily living (Docket No. 13, Def. Memo. at 23).

From review of the record, plaintiff's ability to perform daily activities has changed. Taken in chronological order, on February 2014, plaintiff reported that she drove her children to school, showered, cared for her family and pet, but only slept one to two hours a night [R. 192]. On March 2014, she reported to Dr. Ippolito that plaintiff cooked, shopped, care for children, showered, bathed, dressed, and drove, but needed assistance in cleaning and laundry due to lifting [R. 591]. From Dr. Ramesh's treatment notes in 2015 and 2016 plaintiff reported that she

12

helped her parents [R. 814, Mar. 3, 2015], later living with her parents and traveling to Florida [R. 809, Aug. 25, 2015; R. 858, Jan. 12, 2016, R. 50]. She testified on April 2016 that she only drove once or twice a week, with her daughter driving most of the time [R. 41]. She testified that chores were performed by her daughter, including the laundry due to the weight of the baskets and climbing stairs [R. 56].

This Court notes that the impairments deemed severe were mental rather than physical (save osteopenia, a decrease in bone density, Taber's Cyclopedic Medical Dictionary 1280 (16th Ill. ed. 1989)) [R. 12-13] and plaintiff did not object to other ailments not being deemed severe. Thus, the ALJ considered Dr. Rahman's opinion in determining plaintiff's <u>mental</u> residual functional capacity [R. 25]. As a physician whose opinion is on a psychological evaluation, the ALJ could diminish the weight given to Dr. Rahman's opinion, <u>see</u> 20 C.F.R. § 404.1527(c)(5) (agency generally gives more weight to the medical opinion of a specialist about issues in their specialty than to a generalist). So, the variety of daily activities plaintiff could perform during the pendency of her disability application has to focus on her mental impairments, her mental capabilities to perform daily activities and her concentration. Considering these activities, this Court finds that the ALJ had substantial evidence to weigh the treating physician's opinion as to plaintiff's capabilities to work. The fact, for example, plaintiff needs help cleaning and laundry due to the physical demands of those chores would not indicate a mental impairment.

Therefore, plaintiff's motion on this ground is **denied**. There remain plaintiff's subjective complaints, including fatigue reflected in plaintiff's changes in her daily activities, that is considered below.

III.    Plaintiff's Subjective Complaints

Plaintiff finally argues that the ALJ did not properly evaluate her subjective complaints of pain and fatigue (Docket No. 9, Pl. Memo. at 20-24). She contends that the ALJ mischaracterized the record in finding that plaintiff could engage in a wide range of daily activities (see id. at 16-17). Plaintiff testified that she had fatigue that interfered with her daily activities [R. 54]. Plaintiff's counsel then asked the vocational expert whether a hypothetical claimant with plaintiff's residual functional capacity but required breaks 15% of the workday could remain employed [R. 79-80]. The expert opined that such breaks would rule out the three occupations the expert identified [R. 80]. Plaintiff argues that if she were credited by the ALJ, based on the vocational expert's opinion she would be found disabled (Docket No. 9, Pl. Memo. at 21-22).

Defendant argues that the ALJ could rely upon plaintiff's medication alleviating her symptoms (Docket No. 13, Def. Memo. at 25; [R. 20, 23]). Plaintiff argues that the side effects of Xanax and steroid hydrocortisone she took was drowsiness (Docket No. 9, Pl. Memo. at 22-23). Defendant once again points to plaintiff's activities of daily living as undermining any subjective complaints (Docket No. 13, Def. Memo. at 26).

As noted above, plaintiff's daily activities varied throughout the application period, with her activities reducing over that time. Plaintiff testified that she took two to three naps a day for up to three hours [R. 54]. As plaintiff notes (Docket No. 9, Pl. Memo. at 22), the medical record supports plaintiff's subjective complaints of fatigue. Dr. Rahman noted several times plaintiff's complaints about fatigue while listing her medication including Xanax and hydrocortisone [R. 686, 804, 915, 917]. The ALJ did not factor in either her fatigue or the side effects of two

14

medications, which the ALJ recognized plaintiff used effectively, save allowing plaintiff's counsel to pose fatigue in a hypothetical to the vocational expert. This requires **remand**. Plaintiff's motion on this ground is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 17, 2019